UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| AMY WOODHOUSE, ET AL., | ) |
| | ) |
| PLAINTIFFS | ) |
| | ) |
| v. | ) CIVIL NO. 1:14-CV-266-DBH |
| | ) |
| MAINE COMMISSION ON GOVERNMENTAL ETHICS AND ELECTION PRACTICES, ET AL., | ) |
| | ) |
| DEFENDANTS | ) |

**DECISION AND ORDER ON MOTION FOR PRELIMINARY INJUNCTION**

Four Maine residents have requested a preliminary injunction ordering the State to permit them to double their contributions to an independent candidate for governor in the 2014 election. They want to be able to match the higher amounts that contributors have been allowed to give to the Democratic and Republican candidates. Maine has a $1,500 contribution ceiling per "election" and defines a primary as a separate election. Under Maine law, party candidates have a primary election before the general election; independent candidates do not. Until the date of the primary, contributors to party candidates can contribute for both elections (primary and general), i.e., up to $3,000. The party candidates can use any of this money for the general election. This year the Democratic and the Republican candidates had no opponents in their respective primary elections. The issue is whether this contribution scheme as applied in

this election when there was no contested primary unconstitutionally discriminates against contributors to independent candidates.[1]

There is no factual dispute, the issues have been briefed thoroughly, and I heard oral argument on August 12, 2014. I conclude that the four plaintiffs who wish to increase their contributions to an independent candidate to the ceiling allowed to those who contributed to party candidates before the primary have met the standards for a preliminary injunction. Accordingly I **GRANT** their motion.

**BACKGROUND**

Maine statutes and regulations prohibit individuals from contributing more than $1,500 to a candidate for governor. 21 M.R.S.A. § 1015(1). The $1,500 cap is per "election." Id. The statute defines the term "election" to mean "primary and general elections and referenda, whether regular or special." 21-A M.R.S.A. § 1 (2). In connection with the governor's race, state regulations define it as "any primary, general or special election for Governor." 94-270 C.M.R. ch. 1, § 1 (9). Party candidates must win a primary election in order to appear on the general election ballot. 21-A M.R.S.A. § 331. An independent candidate does not confront a primary. Id. § 351. Accordingly, beginning at the time the candidate declares candidacy, supporters of a party candidate can contribute twice the $1,500 limit—once for attribution to the primary and once for

---

[1] At oral argument the plaintiffs' lawyer varied in saying that the challenge was only as applied, or "principally" as applied, or "not really a facial case." A facial challenge is foreclosed in light of the First Circuit's ruling in Daggett v. Commission on Governmental Ethics & Election Practices, 205 F.3d 445 (1st Cir. 2000), which I discuss later, and I consider only the "as applied" challenge.

2

attribution to the general election—for a total of $3,000.[2] Before the primary election date, the candidate must segregate amounts attributed to the general election and not use them until after the primary. 94-270 C.M.R. ch. 1, § 6(7)(A). Amounts attributed to the primary, however, can be used in either election.[3] In contrast, contributors to an independent candidate can never give more than $1,500 to their candidate at any time.

This year, party nominees were required to gather 2,000 registered voter signatures by March 17, 2014, to get their names on the primary ballots, 21-A M.R.S.A. §§ 6, 334, 335(5)(A). Only Michael Michaud did so as a Democrat; only Paul LePage did so as a Republican. Even after the signature-filing deadline of March 17, the Democratic and Republican nominees could have faced opposition in their respective primaries from a write-in candidate who submitted a declaration of candidacy by 5 p.m. on April 28, 2014. Id. §§ 338, 722-A. No one did so.[4] Accordingly, after April 28, candidates Michaud and LePage could face no primary opposition.[5] Nevertheless, supporters of those party candidates could

---

[2] Contributions after the date of the primary election are limited to the single $1,500 for the general election. The plaintiffs' motion papers captured screen shots of the party candidates' webpages that showed invitations for $3,000 contributions after the primary election date. LePage Campaign website screen shot on July 2, 2014 (ECF No. 3-8); Michaud Campaign website screen shot on July 2, 2014 (ECF No. 3-9). When the Maine Commission on Governmental Ethics and Election Practices learned what the websites said, its executive director wrote to both campaigns informing them that they were giving incorrect advice, that they needed to change their website contents, and that if there had been any contribution exceeding $1,500 after the primary, the campaigns would need to report and return it. Affidavit of Jonathon Wayne ¶¶ 10, 11 (ECF No. 18-2); Letter to LePage and Michaud campaigns dated July 8, 2014 (ECF No. 18-11). The websites were then corrected. Wayne Aff. ¶ 11.

[3] The statute and regulations are silent on this latter point, but at oral argument the lawyers for both sides agreed that in fact that is how such contributions are treated.

[4] It does not affect my decision, but I take judicial notice that the party candidates are respectively a sitting congressman (Michaud) and a sitting governor (LePage), both with plenty of name recognition, and thus a huge deterrent to any write-in candidacy.

[5] Since they had no opponents, the only remaining requirement was that a single vote be cast in the primary election. 21-A M.R.S.A. § 723(1).

continue to contribute $3,000 to their respective candidates (as they could before the April 28 deadline), while supporters of the independent candidates continued to be limited to $1,500 (as they were from the outset).[6] Only after the June 10 primary were supporters of the party candidates limited to $1,500 like supporters of independent candidates.[7]

Independent candidates were required to gather 4,000 signatures by June 2, 2014, in order to get their names on the general election ballot. 21-A M.R.S.A. §§ 6, 354(5)(B), (8-A). Eliot Cutler and Lee Schultheis both did so.

The four plaintiffs have each contributed the $1,500 maximum to independent candidate Cutler and they want to contribute more. Dec. of Amy Woodhouse ¶¶ 4, 5 (ECF No. 3-1); Dec. of Richard Toby Scott ¶¶ 4, 6 (ECF No. 3-2); Dec. of William Hastings ¶¶ 4, 6 (ECF No. 3-3); Dec. of J. Thomas Franklin ¶¶ 4, 5 (ECF No. 3-4). The Commission says that on account of Maine statutes, they may not. Oct. 18, 2013 Letter from the Maine Commission on Gov. Ethics and Election Practices to attorney representing Cutler (ECF No. 3-11). The plaintiffs say that prohibition unconstitutionally infringes their First Amendment rights of speech and association and denies them equal protection of the laws.

None of the candidates is a party in this lawsuit.

## ANALYSIS

A court must consider four things in deciding whether to issue a preliminary injunction: the plaintiffs' likelihood of success on the merits; the

---

[6] Interestingly, the Maine Clean Elections Act allows less state money to a gubernatorial candidate in an uncontested primary than in a contested primary. 21-A M.R.S.A. § 1125(8-A).
[7] There was even some confusion about that by the party candidates. See note 2 supra.

potential for irreparable injury if the injunction does not issue; the balance of the hardships to the parties in issuing or denying the injunction; and the effect, if any, on the public interest. Corporate Technologies, Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Likelihood of success is always the most important, W Holding Co., Inc. v. AIG Ins. Co.-Puerto Rico, 748 F.3d 377, 383 (1st Cir. 2014), and I turn to it first.

*Likelihood of Success*

*Introduction*

First, I summarize the relevant caselaw on the issues that the plaintiffs have raised. The fountainhead of modern election law is Buckley v. Valeo, 424 U.S. 1 (1976). Although the decision has been mightily criticized over the years, the Supreme Court has not yet upset two of its major principles: limits on expenditures *by* candidates are unconstitutional; limits on contributions *to* a particular candidate will be upheld if they are appropriately designed to reduce quid pro quo corruption or the appearance of corruption. In concluding that contribution limits are constitutional, Buckley said that "contribution and expenditure limitations both implicate fundamental First Amendment interests," 421 U.S. at 23, but that limitations on a candidate's expenditures for political expression are "significantly more severe restrictions on protected freedoms of political expression and association than . . . limitations on financial contributions." Id. With respect to First Amendment expression:

> a limitation upon the amount that any one person or group may *contribute* to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication. A contribution serves as a general expression of support for the candidate and his

5

> views, but does not communicate the underlying basis for the support. The quantity of communication by the contributor does not increase perceptibly with the size of his contribution, since the expression rests solely on the undifferentiated, symbolic act of contributing. At most, the size of the contribution provides a very rough index of the intensity of the contributor's support for the candidate.

Id. at 20-21 (emphasis added). With respect to First Amendment association:

> Making a contribution, like joining a political party, serves to affiliate a person with a candidate. In addition, it enables like-minded persons to pool their resources in furtherance of common political goals. The Act's contribution ceilings thus limit one important means of associating with a candidate or committee, but leave the contributor free to become a member of any political association and to assist personally in the association's efforts on behalf of candidates.

Id. at 22. This Buckley principle—that contribution limits implicate fundamental First Amendment interests but less so than expenditure limits—continues to be the law, see, e.g., Randall v. Sorrell, 548 U.S. 230, 246-7 (2006); Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S.Ct. 2806, 2817 (2011), although the Justices disagreed recently on how it applies to aggregate contributions by a donor to all candidates or committees. McCutcheon v. Federal Election Comm'n, 134 S. Ct. 1434 (2014).

The contribution limits part of Buckley focused primarily on whether it was constitutional to limit contributions at all, not on discrimination *among* contributors. It is true that the federal statute at issue in Buckley set contribution limits that, like the Maine statute here, were per election limits, with primaries identified as separate elections. And Buckley dealt briefly with a "charge of discrimination against minor-party and independent candidates." Id. at 33. It found the charge "more troubling" than a charge of discrimination

6

between incumbents and challengers. Id. But the Buckley plaintiffs challenged the federal statute "on its face,"[8] and the Buckley Court found that the record before it did not support the charge that the statute as written "invidiously disadvantages such candidates." Id.[9] Buckley did not address the statute "as applied," *i.e.*, under a specific factual scenario, as the plaintiffs do here, with their challenge to how the contributions limits work when the Democratic and Republican primaries are uncontested.

In Daggett v. Webster, 81 F. Supp. 2d 128 (D. Me. 2000), I dealt with a challenge by minor party candidates to Maine's per election limits (at that time minor parties were not required to have a primary election). I said that it was only "a theoretical debate" because the record in the case showed that seldom had a contribution to a minor party candidate been made at the maximum level. Id. at 138. Applying Buckley, I said: "The separate limits are rational and supportable because primary campaigns ordinarily can be *expected* to require separate and additional expenditures. *If actual prejudice ultimately is shown, the matter can then be revisited.*" Id. (emphasis added). The plaintiffs here say that

---

[8] According to the Supreme Court, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987).

[9] Buckley was decided January 30, 1976. On December 3, 1975, the Federal Election Commission proposed a regulation (later adopted and now appearing in 11 C.F.R. § 100.2) that would treat independent candidates as engaged in a primary election just as a party candidate is, until the date of the primary, thus achieving the equality goal for contributors to independent candidates that the plaintiffs seek here. See 11 C.F.R. § 110.1(j) and Letter of Transmittal from Federal Election Commission to Speaker of the House of Representatives, H.R. Doc. No. 94-293, at III-V. According to the FEC chair at the time of the proposal, "[t]he definitions under 'election' are designed to be neutral as between party affiliated and independent candidates. Generally, each candidate will participate in two elections: The primary (*for independents, a comparable period during which he or she may secure a position on the general election ballot*) and the general election." H.R. Doc. No. 94-293, at 28 (emphasis added). I do not know whether the Buckley Justices were aware of that interpretation.

7

the 2014 election with its uncontested primaries shows the actual prejudice on which I reserved judgment in Daggett, and that I must now confront that issue.

The First Circuit affirmed Daggett. Daggett v. Commission on Governmental Ethics & Election Practices, 205 F.3d 445 (1st Cir. 2000). On this issue of distinguishing among contributors, it stated that it did "not find enough to deem the limits facially unconstitutional," id. at 461, and:

> The argument that candidates unenrolled in parties are unfairly prejudiced was rejected as a basis for overturning contribution limits in Buckley (elaborating that "the record provides no basis for concluding that the [Federal Election Campaign] Act invidiously disadvantages such candidates" because "the Act *on its face* treats all candidates equally with regard to contribution limitations.).

Id. (italics added; citation to Buckley omitted). In other words, the First Circuit's focus was a constitutional challenge to the Maine statute "on its face." The First Circuit did not deal with it as applied in specific circumstances. In Wisconsin Right to Life, Inc. v. Federal Election Comm'n, 546 U.S. 410 (2006), the Supreme Court confirmed that a statute upheld as facially constitutional still can be successfully challenged later on an as-applied basis.

Here, unlike Buckley and Daggett, the discrimination-among-contributors issue is central and is presented in the factual context of an election where the party candidates had no contested primary, and yet their contributors were able to contribute double the single election limit, while contributors to independent candidates could not. There is, moreover, a very recent Tenth Circuit decision that is relevant, although not controlling. In Riddle v. Hickenlooper, 742 F.3d 922 (10th Cir. 2014), contributors to a write-in candidate for the Colorado House

8

of Representatives challenged a Colorado statute that set a lower contribution limit ($200) for them than it set for contributors to major party candidates who ran in uncontested primaries ($400). The Tenth Circuit found that, "as applied" to a case where each candidate was unopposed for the nomination, the Colorado statute violated the equal protection clause. Id. at 925. "[T]he statutory classification violates the right to equal protection for individuals wishing to contribute to write-ins, unaffiliated candidates, and minor-party candidates when each candidate runs unopposed for the nomination." Id. at 930. In Colorado, unlike Maine, a supporter who contributed to a party candidate *after* the uncontested primary was over could still contribute the double amount. In Maine, such contributors can no longer contribute the double amount *after* the date of the uncontested primary—this year June 10. They were able, however, to contribute the double amount at the beginning of the Michaud and LePage candidacies and even during the 45 days between the date it became certain that there would be no primary contest (this year April 28) and the primary election, June 10.

With that caselaw background, I turn to the resolution of this case. The supporters of independent candidate Cutler make two claims: that the Maine contribution limits—as they apply to supporters of independent candidates, as compared to supporters of party candidates who do not face contested primaries—violate the equal protection clause; and that they unconstitutionally infringe the First Amendment rights of contributors to independent candidates.

9

**Equal Protection Clause**

The plaintiffs' equal protection clause argument is the heart of their challenge. These contributors do not contend that Maine's campaign contribution limits are too low,[10] but that the limits discriminate against those who want to contribute to independent candidates and in favor of those who support party candidates, by allowing contributors to party candidates to contribute twice, even when there is no contested primary. Thus, while First Amendment interests are at stake, it is the asserted unequal treatment among contributors that is the central issue.

*Similarly Situated*

The first step in an equal protection analysis is to determine whether the plaintiffs are in fact "similarly situated" to those who they claim are treated more favorably, here contributors to the Democratic and Republican candidates who faced no contested primary. These Cutler supporters say that they are similarly situated to contributors to candidates Michaud and LePage because they all are seeking to get their respective candidates elected governor. The State says that the contributors are *not* similarly situated because "LePage and Michaud are required to compete in two elections in 2014, whereas Cutler has chosen to run as an unenrolled candidate and therefore is competing in just one election." Defs.' Mem. In Opp. To Pls.' Mot. to Prelim. Inj. at 10 (ECF No. 18).

I conclude that the Cutler supporters are similarly situated to other contributors in the Governor's race. The test is whether they are alike "in all

---

[10] The plaintiffs say that the case is "not about . . . the State's decision to set a ceiling for campaign contributions." Pls.' Reply at 2 (ECF No. 19).

relevant respects." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). The Cutler supporters' First Amendment interest here, as the Supreme Court has recognized in Buckley, is that of both communicating their support and associating with other like-minded persons, the same interest that Michaud and LePage contributors have. The State's rationale does not show that contributors to independent candidates are *different* from contributors to party candidates, but rather is an explanation of why the State *treats them* differently, having created a mandatory primary system for party candidates but not others. I will consider that factor below, but it does not change the fact that these plaintiffs are contributors seeking to get their candidate elected governor, just as Democratic and Republican donors are. In that respect, therefore, I agree with the Tenth Circuit in Riddle that, in determining whether contributors are similarly situated, it is important not to confuse "the contributors with their preferred candidates," and that "the equal-protection claim was asserted by the contributors, not [their candidate]. They simply want to contribute to their preferred candidate." 742 F.3d at 926. These plaintiffs and the Michaud and LePage contributors are alike "in all relevant respects."

### *Constitutional Standard*

Since I conclude that the plaintiffs are similarly situated to contributors to the Democratic and Republican candidates, I proceed to assess under the equal protection clause the justification for how Maine treats them. Ordinarily governmental programs that classify or differentiate are constitutional if they bear a rational relationship to a legitimate government objective. Plyler v. Doe, 457 U.S. 202, 216 (1982); Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 145 (1st

Cir. 2001). When a suspect classification like race is used, or a fundamental interest like the right to vote is at stake, however, a much stronger justification is required, namely a compelling governmental interest, and a necessary relationship between the classification and that interest. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995); Massachusetts v. U.S. Dept. of Health and Human Services, 682 F.3d 1, 8-9 (1st Cir. 2012).

Here, there is no suspect classification and the right to vote is not directly at stake. Instead, what is at stake is the somewhat less significant contributors' First Amendment interest as the Supreme Court described it in Buckley. In Buckley, enunciating First Amendment law, the Court said that interference with a contributor's protected rights of political association "may be sustained if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." Buckley, 424 U.S. at 25. That formulation is still the standard for any First Amendment analysis of contributors' rights. McCutcheon. 134 S. Ct. at 1444. Neither the Supreme Court nor the First Circuit has announced any different standard for dealing with First Amendment discrimination challenges, and I therefore apply it in this equal protection context.[11]

The State argues that its interest in preventing quid pro quo corruption or its appearance is a "sufficiently important interest" under Buckley. Indeed, that is precisely what Buckley said, but the plaintiffs here do not challenge the need

---

[11] In Riddle, the Tenth Circuit recognized uncertainty over the standard of review for an equal protection challenge, but found it unnecessary to resolve because it would reach the same outcome under both the compelling interest standard and the sufficiently important interest standard. In his concurrence, Judge Gorsuch described thoroughly the relevant Supreme Court caselaw and its ambiguity. Riddle, 742 F.3d at 931-33.

12

for a ceiling. What the plaintiffs challenge is the *difference* in ceilings, $1,500 for contributors who support an independent, and $3,000 for contributors who support a Democrat or a Republican even though they have no contested primary.[12] The State is unable to show *any* relationship between the difference in ceilings and its interest in preventing corruption, let alone show that the difference is a "means closely drawn" to avoid corruption. Even though prevention of corruption is a sufficiently important state interest, there is no suggestion that the corruption/appearance of corruption issue is more pronounced for independents than for party candidates. Riddle reached the same conclusion, that distinctions among contributors have little to do with the corruption prevention concern. 742 F.3d at 928.

The only plausible reason for having different contribution standards (other than an effort to favor party candidates over independents) is that a primary requires a party candidate to spend more money than an independent candidate who has no primary. That is not a corruption issue at all. That extra obstacle, if that is what a primary amounts to, is created by the State. The primary may require additional candidate *expenditures* (there is no evidence of that, only presumptions[13]), but it is not a reason for treating *contributors*

---

[12] At oral argument, the Attorney General's office argued that there could be a great deal of debate over what is a "contested" primary, i.e., that some opponents may be less serious or threatening than others. I am dealing with the statute as applied in this election, and need not address that hypothetical issue.

[13] The record reflects that as of June 10, 2014, Eliot Cutler had total expenditures of $1,334,404.45, Paul LePage had total expenditures of $269,664.98 and Michael Michaud had total expenditures of $827,099.16. 2014 Gubernatorial Candidates Pre-Primary Contributions and Expenditures (ECF No. 18-9).

13

differently.[14] The Supreme Court has said: "We have never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other." Davis v. Federal Election Comm'n, 554 U.S. 724, 738 (2008). And here there was no primary contest to require candidate expenditures, certainly after April 28 (and arguably not after March 17, when only a write-in candidate could be added).[15] Although the State's lawyers speculate that even an uncontested primary might require some action by the party candidates, there is no evidence of that at all.[16] (And I do not address whether there is actually a higher hurdle for the independent candidate without a primary, who must find an equivalent way to achieve name recognition and public attention so as not to be late off the mark for the general election at the close of primary season.)[17] I conclude that the State's treatment of contributors

---

[14] If anything, this differentiation among contributors based upon whether a candidate confronts a primary seems like the kind of level playing field motives that the Supreme Court frowns upon. Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806, 2825 (2011)(("We have repeatedly rejected the argument that the government has a compelling state interest in 'leveling the playing field' that can justify undue burdens on political speech."). There are many factors that the State may want to, but may not, equalize—the wealth of the respective candidates and how much money they might individually devote to the candidacy, Davis v. Federal Election Comm'n, 554 U.S. 724, 741 (2008)(there an attack by a candidate, not a contributor); reputational issues that a candidate might confront that require extra expense and effort to address; what PAC support they may have. According to Davis:
> Different candidates have different strengths. Some are wealthy; others have wealthy supporters who are willing to make large contributions. Some are celebrities; some have the benefit of a well-known family name. Leveling electoral opportunities means making and implementing judgments about which strengths should be permitted to contribute to the outcome of an election. The Constitution, however, confers upon voters [not the government, the power to make such choices.]

Id. at 742.

[15] The defendants tell me that the last time both party primaries were uncontested was June 1990. Response Brief at 6. One party's primary was uncontested in a gubernatorial race as recently as 2002. Maine Primary Elections for Governor (ECF No. 18-3). Because the plaintiffs are challenging the law as applied in this election, that history is interesting, but it does not alter my conclusion regarding the law's impact in this election.

[16] See note 5 supra.

[17] Moreover, as Judge Gorsuch, concurring in Riddle, pointed out, even if candidates in primaries need more money, that speaks only to need in the primary election and does not justify allowing

does not meet the Buckley standard of "means closely drawn to avoid unnecessary abridgment of associational freedoms."

### First Amendment Challenge

Because I find that the plaintiffs are likely to prevail on their equal protection argument, I do not address their First Amendment challenge except to note that they do not challenge the actual contribution limits, only the differentials, and that this is not the classic First Amendment case prohibiting discrimination among speakers or viewpoints in a public forum.

### *Irreparable Injury*

It should go without saying that if the plaintiffs are not able to contribute soon at the higher level, they will suffer irreparable injury. Timing is everything in an election. Contributing after a successful trial—unlikely to occur this year and therefore not before the election—would be fruitless.

### *Balance of Harms*

It is difficult to see any hardship to the State in directing it to allow a uniform contribution ceiling. If I look at the State as a proxy for the interests of contributors to party candidates, their interests are equivalent to that of the plaintiffs. (In Buckley, the Supreme Court pointed out that contributors have other ways to advance their First Amendment interests, but that their First Amendment interests nevertheless are infringed and are fundamental.) I conclude that the balance of harms does not make a difference in this case.

### *Public Interest*

---

that money to be spent in the general election where other candidates have been prohibited from raising the extra amounts. 742 F.3d at 932-3.

There is no harm to the public interest in issuing the injunction. The higher limits, as I have reasoned, are unrelated to quid pro quo corruption or its appearance. If my decision is correct, moreover, the public interest is furthered by the injunction.

## Conclusion

It is tempting to look at this dispute solely through the eyes of the candidates in the election for governor and to debate whether independent candidates have greater headwinds in getting public recognition of their campaigns or whether party candidates have greater headwinds because they must survive a primary. To the degree those arguments have to do with how much money a candidate must spend, the Supreme Court has said there can be no limits on expenditures. To the degree that the arguments have to do with how much money a candidate must raise, the Supreme Court has told us that the Constitution disfavors efforts to level the playing field.

In any event, I am dealing not with a *candidate's* claim but a *contributor's* claim, and a contribution dispute is different. I am deciding only the rights of individuals who wish to exercise their First Amendment rights to support their independent candidate for governor. I do not lightly find a state statute unconstitutional. But these four Maine residents have shown a strong likelihood of success on the merits of their claim that in *this* election they have suffered unconstitutional discrimination as compared to contributors to party

candidates. I conclude that the plaintiffs have satisfied the test for a preliminary injunction.[18]

### *The Preliminary Injunction*

The parties shall confer on whether there is need for an actual injunction and, if so, compose language that satisfies Fed. R. Civ. P. 65(d).[19] In doing so, the defendants may preserve their substantive objections to my decision. The parties shall file that language with the court by August 29, 2014, and if they cannot agree, file their counter-proposals by that same date with the reasons for their disagreement. If the defendants contend that security is required under Rule 65(c), the parties shall address that issue on the same schedule.

### **Stay**

At this stage, the defendants have not requested a stay of any injunction that I might issue. I would be disinclined to grant a stay. The plaintiffs' right to exercise their First Amendment rights equally with other contributors should not be delayed. And their exercise of those rights does not seriously affect the First Amendment rights of other contributors to exercise their similar rights. So I see no reason to delay the increase in the contribution limits. But of course the

---

[18] I express no view on whether, in light of the injunctive relief I am awarding the plaintiffs, the Commission must or should alter its previous advice to the Michaud and LePage campaigns that they cannot accept $3,000 contributions after the date of the primary.

I also express no view on the proper solution for the future. That is up to the State of Maine to devise. The plaintiffs' lawyer suggested at oral argument that the case might be different if amounts raised for the primary had to be segregated and could not be used in the general election; after the Riddle decision, Colorado amended its statute to make the ceiling for contributing to those not in primaries the same as for contributing to those with primaries, 2014 WL 3375031 at *1 (D. Colo. 1914); the Federal Election Commission treats the period ending on the date of the party primary as a primary election for an independent candidate. See note 7 supra.

[19] The defendants have preserved their right to argue that some, but not all, of the defendants, should be dismissed. Presumably the injunction language will deal with that issue.

court of appeals may see things differently and issue a stay of its own while it deliberates on the issues if there is an appeal.

The plaintiffs' motion for preliminary injunction is **GRANTED**.

The Clerk's Office shall schedule a conference before the Magistrate Judge to resolve the scheduling of all further proceedings in this case unless there is an interlocutory appeal.

**SO ORDERED.**

**DATED THIS 22ND DAY OF AUGUST, 2014**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**